UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
POST INVESTORS LLC,

           Plaintiff,



12 Civ. 4479 (ALC) (AJP)

         - against -                  **OPINION & ORDER**

STANLEY W. GRIBBLE & FESTIVAL
RETAIL FUND 1, LP,

           Defendants.
------------------------------------------------------------X

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff brought this action in the New York State Supreme Court of New York County on May 4, 2012, seeking recovery against Defendants pursuant to New York contract law. Defendants removed the action to this Court on June 7, 2012, pursuant to 28 U.S.C. §§ 1332(a), 1334(b), 1441(a), and 1452(a). On July 3, 2012, Plaintiff moved to remand the case back to state court, or alternatively for the Court to abstain from exercising jurisdiction pursuant to 28 U.S.C. §§ 1334(c)(2), and for costs and expenses incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c).

    For the reasons stated below, Plaintiff's motion to remand is granted and request for costs and expenses is denied.

### BACKGROUND

    The background is drawn from the Notice of Removal, the Notice of Remand, Plaintiff's Memorandum of Law in Support of Motion to Remand to State Court and exhibits thereto, Defendants' Memorandum of Law in Opposition and exhibits thereto, and Plaintiff's Reply Memorandum of Law and exhibits thereto.

1

Post Investors LLC ("Plaintiff") is a Delaware limited liability company. One of its members is Square Mile Post Street LLC, another Delaware limited liability company. One of the members of Square Mile Post Street LLC is Square Mile Partners III LP, a limited partnership with many investors located throughout the United States. At least one of the limited partners of Square Mile Partners III LP is a citizen of California. Thus, Plaintiff has at least one member that is a citizen of California.

Defendant Stanley W. Gribble is an individual residing in Newport Beach, California.

Defendant Festival Retail Fund 1, LP ("Festival") is a Delaware limited liability partnership with its principal place of business in Los Angeles, California. The General Partner of Festival has its principal place of business in California. The sole member of the General Partner is a California general partnership, which is owned by two California residents.

On May 4, 2012, Plaintiff commenced this action against Stanley W. Gribble and Festival (collectively "Defendants") in New York State Court by moving for summary judgment in lieu of complaint to establish Defendants' liability under a non-recourse carve-out guaranty (the "Guaranty") of a loan in the original principal amount of $59,850,000 (the "Loan") to purchase a multi-tenant retail building in San Francisco, California (the "Project"). The Loan was evidenced by a promissory note dated as of July 24, 2007 in the original principal amount of $59,850,000 executed by Festival and secured by a mortgage encumbering the Project. Festival executed and delivered a guaranty as additional security for the Loan.

In December 2007, Post Street, LLC ("Post Street") acquired an equity interest in the Project. In connection with such acquisition, Post Street executed and delivered a Joinder to Promissory Note dated as of December 21, 2007, whereby Post Street agreed "to join as maker of said Note and as a 'Borrower' thereunder, agreeing to be bound, jointly and severally, by . . . the terms thereof." Post Street and Festival are referred together as "Borrowers."

The Loan allegedly matured on August 1, 2010 and has not been repaid by the Borrowers. Plaintiff refused to permit extension of the maturity date of the loan. On January 6, 2011, Plaintiff recorded a Notice of Default in accordance with the provisions of California law as a prerequisite to conducting a foreclosure sale of the Project under the terms of the mortgage. After receiving a Notice of Default on the loan, each of the Borrowers filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the Northern District of California under Chapter 11 of Title 11 of the United States Bankruptcy Code. Plaintiff argues that under the terms of the Guaranty, Defendants became obligated to pay the Loan when each of the two joint Borrowers filed voluntary petitions for bankruptcy. The issues to be litigated involve solely New York commercial law concerning the validity of an absolute and unconditional guaranty upon the Borrowers' default and the operation and effect of the numerous broad defense waivers therein. (See Opp. Mem. at 11-12.) Defendants waived any defense except for willful misconduct or gross negligence.

On June 7, 2012, Defendants removed the action to this Court, asserting that the Court has "related to" jurisdiction under 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b) because this case "both arises in and is related to" pending bankruptcy cases in the United States Bankruptcy Court for the Northern District of California. The Notice of Removal does not allege that this action arises under title 11. As another basis for removal, Defendants erroneously claimed that there is complete diversity of the parties under 28 U.S.C. §§ 1332(a) and 1441(a). Upon review of Plaintiff's documentary proofs, Plaintiff and Defendants subsequently agreed that diversity of citizenship is lacking. (Letter from Plaintiff's Counsel Steven Sinatra, Greenberg Traurig, to Chambers of the Hon. Andrew L. Carter (Aug. 3, 2012).)

Plaintiff now moves for remand since the parties are not completely diverse. Plaintiff also argues for remand because abstention is required by law and the Guaranty contains a mandatory exclusive forum selection clause. Under the terms of the forum selection clause, Plaintiff was given the

3

right to choose whether to commence litigation in state or federal court. Defendants expressly waived any right to object to Plaintiff's choice.

## DISCUSSION

### I. Legal Standard

Any civil action brought in state court may be removed to the federal district court that embraces the state court only if the federal courts have original jurisdiction over the matter. See 28 U.S.C. § 1441(a). When challenged, the party seeking removal bears the burden of establishing this jurisdiction. See In re Refco, Inc. Sec. Litig., 628 F.Supp.2d 432, 437 (S.D.N.Y. 2008) (citing In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 316 (S.D.N.Y. 2003)). On a motion for remand, we "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff," In re NASDAQ Mkt. Makers Antitrust Litig., 929 F.Supp. 174, 178 (S.D.N.Y. 1996), and, "out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability." California v. Atl. Richfield Co. ( In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.), 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks and alterations omitted).

### II. Bankruptcy Jurisdiction Under 28 U.S.C. § 1334(b)

### A. The Contours of "Related To" Jurisdiction

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Litigation is "related to" a bankruptcy proceeding "if the action's 'outcome might have any conceivable effect on the bankrupt estate.' " Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992)).

"Conceivable effects" typically manifest themselves by altering "[t]he amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among

4

such creditors." In re Kolinsky, 100 B.R. 695, 702 (S.D.N.Y. 1989), cited in Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp., 198 B.R. 55, 61 (S.D.N.Y. 1996). A single bankruptcy being affected in this way is sufficient to support "related to" jurisdiction. See, e.g., City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc., 572 F.Supp.2d 314 (E.D.N.Y. 2008) (finding "related to" jurisdiction based on one originator's bankruptcy when the underlying complaint made allegations against five originators).

Contingent outcomes can satisfy the "conceivable effects" test. The outcome need not be certain; the possibility of an effect is sufficient. See Parmalat, 639 F.3d at 579 (concluding that the test was satisfied because a possible outcome of the underlying action would augment a bankruptcy estate); see also generally Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.").

Yet "related to" jurisdiction is still cabined. Indeed, the Supreme Court has admonished that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); see also In re Turner, 724 F.2d 338, 341 (2d Cir. 1983) ("... Congress must have intended to put some limit on the scope of 'related to' jurisdiction."). Thus, any contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude "related to" jurisdiction. See Pacor, 743 F.2d at 995 (finding that, absent an "automatic creation of liability" against the bankrupt, the underlying action was too far removed from the bankruptcy to be related). An outcome's contingency does not preclude it from having a "conceivable effect" on a bankruptcy proceeding. See Parmalat, 639 F.3d at 579.

Defendants claim that this action "arises in" the Borrower's bankruptcy cases because "the Loan and the enforcement of the Guaranty" are "issues that have been, and continue to be the subject of legal argument before the Bankruptcy Court." (Def.'s Notice of Removal.) The Notice of Removal

5

avers that this action is related to the bankruptcy cases because, if found liable to Plaintiff herein, the Defendants will have an equitable subrogation claim against the Borrowers that could materially affect the Borrower's bankruptcy estates. Here, the bankruptcy case is a liquidation of the Borrower's property and distribution of the sale proceeds. After removal and following a hearing on June 22, 2012, the Bankruptcy Court issued an order dismissing the Borrowers' pending bankruptcy cases on October 1, 2012 unless Plaintiff is repaid by that date. (Opp. Mem. at 9.) The property that is the subject of the Loan will likely be sold within 30 days. The sale price as reflected in the letter of intent to sell the property would generate enough revenue to pay off Plaintiff, including disputed default interest rate fees should the Bankruptcy Court decide that those fees are due, and provide a return to equity.

Any doubts about removability, if they exist, must be resolved in plaintiff's favor. See In re MTBE Prods. Liab. Litig., 488 F.3d at 124. Defendants have failed to establish that the underlying action is sufficiently "related to" any bankruptcy proceedings to justify this Court taking jurisdiction.

### B. Forum Selection Clause

The Guaranty provides Plaintiff the choice to commence an action against Defendants in either state or federal court located in New York County. The Guaranty also waives any of Defendants' objections based on venue and forum non conveniens. In deciding whether a forum selection clause requires remand of an action that was removed to federal court, a party's selection of state court becomes mandatory and bars removal to federal court because the clause at issue gave one party the ability to choose whether to commence the action in state or federal court. AGR Financial, L.L.C. v. Ready Staffing, Inc., 99 F.Supp.2d 399 (S.D.N.Y. 2000). Thus, the action should be remanded to state court.

### III. Mandatory Abstention Under 28 U.S.C. § 1334(c)(2)

Even had defendants shown that the underlying action was "related to" the Borrowers' bankruptcies, the Court would be obligated to remand the action to the state court. Section 1334(c)(2)

6

of Title 28 provides that a district court "shall abstain" from hearing a removed action when six elements are present: (1) the motion to abstain was timely, (2) the action is based on state law claims, (3) the sole basis for federal jurisdiction is 28 U.S.C § 1334, (4) that jurisdiction is based on neither the "arising in" nor the "arising under" clauses of Section 1334(b), (5) an action is commenced in court, and (6) that action can be "timely adjudicated" in state court. See In re Fairfield Sentry Ltd., No. 11 MC 224, 2011 U.S. Dist. LEXIS 106275, at *59–60, 2011 WL 4359937 (S.D.N.Y. Sept. 19, 2011).

A federal court should generally abstain from hearing non-core proceedings if they have already been commenced and can be timely adjudicated in the state forum. 28 U.SC. § 1334(c)(2). The core/noncore determination is an issue of law that is reviewed de novo by this Court. See Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania, et al., 896 F.2d 1394, 1397 (2d Cir. 1990). "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." In re U.S. Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999) (internal citation omitted). The concept of a "core proceeding" is interpreted broadly. Id. at 636–37. A core proceeding is generally defined as a matter which would have no existence outside of the bankruptcy case. See, e.g., In re Kolinsky, 100 B.R. 695, 701 (Bankr. S.D.N.Y. 1989). In contrast, this proceeding would exist outside of the bankruptcy cases, which the United States Bankruptcy Court for the Northern District of California had issued an order dismissing on October 1, 2012 unless Plaintiff is repaid by that date. The state-law claims are non-core. See In re Arbco Capital Management, LLP, 2012 WL 2852619, 5 (S.D.N.Y. 2012). Thus, this action based solely on issues of New York commercial and contract law is a "non-core" proceeding that is "related to a case under title 11" but not "arising in a case under" or "arising under title 11 of the United States Code.

The first five elements are not in contest. (See Opp. Mem. at 8.) The parties have instead focused their energies on the sixth element, whether the New York State Supreme Court's Commercial

7

Division (the "Commercial Division") will be able to adjudicate the dispute in a timely fashion. The Second Circuit has identified four factors that are pertinent to this evaluation: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate. Parmalat, 639 F.3d at 580. Although the question is "informed by the comparative speeds of adjudication in the federal and state forums," it is not simply a matter of "whether an action could be adjudicated most quickly in state court." Id. Thus, a state court may be a "timely" forum, even if it requires longer to adjudicate an action than a federal court, as long as the relevant bankruptcy proceedings will not be hindered by the relative delay.

The first two factors for assessing timeliness require consideration of "the particular factual and procedural circumstances presented in the two courts being compared." Id. For that reason, we must consider actual evidence. The evidence advanced by the parties pertinent to the first factor does not persuade the Court that the backlog of cases is significantly different in this district than in the Commercial Division. With no persuasive evidence on the issue in front of us, we cannot presume one court's backlog is more manageable than the other's.

The relative expertise of the courts also does not tip the balance in favor of either forum. Because the action was removed a month after the filing a summons and notice of motion of summary judgment in lieu of complaint, the state court had no occasion to develop familiarity with the facts. This Court, likewise, has minimal familiarity with the facts of the underlying action.

With respect to the courts' relative legal expertise, neither demonstrates an advantage. While this district has seen its share of residential mortgage-backed securities cases, so has the Commercial Division. See, e.g., MBIA Ins. Co. v. GMAC Mortg., *LLC,* No. 600837/2010 (N.Y.Sup.Ct. Apr. 1, 2010); Ambac Assurance Corp. v. Credit Suisse Sec., No. 600070/2010 (N.Y.Sup.Ct. Jan. 12, 2010);

8

MBIA Ins. Co. v. Res. Funding Co., LLC, No. 603552/2008 (N.Y.Sup.Ct. Dec. 4, 2008). The New York Commercial Division has the expertise to address complex issues relating to guarantor liability under New York law, including whether assigning a loan in violation of a covenant not to assign and contesting a borrower's right to extend the maturity date of a loan constitutes willful misconduct or gross negligence under New York law. Moreover, the cases before the Commercial Division are comparably sized to the underlying action, and some deal with even more loans than the one at issue here. See, e.g., MBIA Ins. Co. v. Countrywide Home Loans, Inc., No. 602825/2008 (N.Y.Sup.Ct. Aug. 24, 2009) (alleging fraud in connection with fifteen offerings, each backed by 8,000 to 48,000 loans). If anything, because the underlying action alleges only state claims, the Commercial Division may have an edge in the relevant legal expertise. Cf. Ace Sec. Corp., 2011 U.S. Dist. LEXIS 91989, at *33 ("While federal district courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims.").

Because the Commercial Division and this district appear equally able to adjudicate the underlying action, we need not address the remaining two factors, which are relevant only if the first two factors suggest that the federal district court would be the timelier forum. With no foreseeable significant difference in the comparative speeds of adjudication of this Court and the Commercial Division, the "timely adjudication" element of mandatory abstention is established. Cf. Fairfield Sentry, 2011 U.S. Dist. LEXIS 106275, at *62, 2011 WL 4359937 (suggesting that the burden lies with the removing party); Ace Sec. Corp., 2011 U.S. Dist. LEXIS 91989, at *22–23 (same). Thus, even if this Court had jurisdiction over the underlying action, we must abstain from exercising it.

**IV. Payment of Costs and Expenses Under 28 U.S.C. § 1447(c)**

Plaintiff requests the Court to order defendants to pay the costs and expenses incurred by the removal of this action from state court, which the Court is permitted to do by 28 U.S.C. § 1447(c). Such an award, however, is appropriate "only where the removing party lacked an objectively

9

reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). In practice, if "lack of jurisdiction was not obvious from the face of the removal petition" and no other unusual circumstances obtain, a court cannot conclude that an objectively reasonable basis was lacking. Albstein v. Six Flags Entm't Corp., No. 10 Civ. 5840, 2010 U.S. Dist. LEXIS 118116, at *11, 2010 WL 4371433 (S.D.N.Y. Nov. 4, 2010); accord Sherman v. A.J. Pegno Constr. Corp., 528 F.Supp.2d 320, 331 (S.D.N.Y. 2007).

While, for the reasons set out in this opinion, the removal petition was not likely to succeed, we cannot conclude that the effort was so objectively unreasonable as to support an award of attorney's fees. Accordingly, the Court denies plaintiff's request for costs and expenses.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand the action to state court is granted.

Dated: New York, New York
September 27, 2012

SO ORDERED.

_____
Andrew L. Carter, Jr.
United States District Judge